HARDY, Judge. ,
Plaintiff brought this suit for damages in the nature of personal injuries sustained in an automobile collision. The named de- ’ fendants are Brady Cardwell, driver of the car in which plaintiff was a passenger, and the Eagle Motor Lines, lessee of the truck which was involved in the collision and which was driven by an employee of said defendant. Prior to trial settlement was made of plaintiff’s demands against the defendant Cardwell. Plaintiff’s demands against the defendant, Eagle Motor Lines, were tried before a jury, which rendered a verdict in favor of. defendant rejecting plaintiff’s demands, and judgment was signed in accordance therewith, from which plaintiff has appealed.
*187 With one startling exception there is no substantial dispute as to the circumstances surrounding the occurrence of the accident. Plaintiff, her husband, Henry F. Tutor, their ten-month old baby, and Brady Card-well, plaintiff’s uncle, left their home in Carlsbad, New Mexico, at about 6:00 o’clock P.M. on August 4, 1952, for a vacation trip to Dalton, Georgia, driving the Tutor automobile, a 1950 Mercury ‘Tudor Sedan. The car was driven steadily by plaintiff’s husband, Henry F. Tutor, from the time of departure from Carlsbad at 6:00 o’clock P.M. on October 4th until 11:20 A.M. on Sunday, October 5th, with a few brief stops for rest'and refreshment. At about the hour of 'll: 20 on the morning of Sunday, October 5th, according to the testimony of plaintiff and Cardwell, after stopping for lunch at a roadside park, Cardwell relieved plaintiff’s husbánd as driver of the automobile and the party proceeded east on U. S. Highway 80.
The accident occurred at a point about 5.8 miles- east of the Town of. Tallulah, Louisiana,- in Madison Parish, ■ when, according to the stark factual .wording of plaintiff’s petition:
“* * * Brady Cardwell, suddenly and without warning, negligently drove said automobile from its fight or south lane of travel into the lane of traffic occupied by the vehicles approaching from the opposite direction.”
A 1948 GMC truck and trailer unit, heavily - loaded with cotton gin machinery and equipment, the total gross weight being some 30,000 pounds, proceeding west on Highway 80, crashed into the right-hand side of the Tutor automobile. After proceeding some 96 feet from the actual point of impact, carrying the Tutor car along the north lane ■ of the highway and the shoulder thereof, the truck overturned and the vehicles came to rest.
Brady Cardwell was thrown to the highway near the point of impact. The Tutor infant was also thrown to the highway at a point some distance nearer the location at which the car finally came - to rest. Th'e body of Henry Tutor was hanging from the automobile, head down,- with- his right foot caught in some manner on the-floor board of the automobile. Cardwell sustained some injuries, the baby miraculously was uninjured, and Tutor died en route to the hospital at Vicksburg. The plaintiff, who was asleep on the rear seat of the automobile at the time of the collision, sustained painful, serious and permanent injuries. She was extric'áted from her position in the automobile with some difficulty, and removed to a hospital in Vicksburg immediately following the accident.' The driver of defendant’s truck, Roy H. Glenn', after his vehicle overtufned, - crawled out the window of the truck cab, uninjured.
There is no dispute about the facts above related but there is an irreconcilable conflict as between plaintiff and defendant with reference to the identity of the driver of the Tutor automobile. It is established by the testimony of plaintiff and. Cardwell that the latter began driving- after-.the parties stopped at the roadside park at -about -11:20 that, morning/: The . plaintiff, ■ Mrs. Tutor, had been asleep for some time prior to the actual collision and therefore could testify only to the certain.-fact that ■ Cardwell had relieved her husband as driver at- the time above noted. Cardwell, apparently clear of 'memory as to events preceding the collision and the incidents occurring after his recovery of consciousness immediately following the accident, suffered a complete lapse of memory covering the brief period of time in which the collision occurred and could testify only to the fact that he did not remember relinquishing the duty of driving. No other witness in the case could testify on this point.
It 'is therefore obvious that the question of the identity of the driver of the Tutor car at the time of the accident must depend entirely upon circumstantial evidence. However, our view and conclusion, as hereinafter expressed, make a resolution of this point completely unnecessary.
Defendant’s motor -truck was. in fact owned by the driver,-Roy Glenn, but at the time was under lease to: defendant, Eagle *188 Motor Lines, by whom Glenn was employed as driver of the truck.
The determination of this case depends solely and simply upon a factual finding as to the negligence of defendant’s driver, Glenn. Adverting to the allegations of plaintiff’s petition we note that this pleading sets out certain specifications of negligence against Glenn to the effect that at the time Brady Cardwell drove the Tutor car into the left lane of travel defendant’s truck was at a sufficient distance to permit rhe driver
“to stop, take evasive action and avoid the accident had the driver thereof been maintaining a lawful speed, keeping a proper lookout and timely applied the brakes on said truck, and had said brakes been in proper working order.”
This allegation is followed by the. affirmative averment that Glenn was driving .at an unlawful -speed, negligently failing to keep a .proper lookout and to timely apply his brakes, and, in-the alternative, that the brakes were defective and that the heavy equipment, on the trück was negligently loaded in such manner that the application of the brakes- caused a shifting of the load, preventing, the stopping of the truck in. time to avoid the accident. -Plaintiff -. further alleged that the, negligence of- Brady Card-well and of defendant’s driver
“concurred to produce'the'collision and accident and said concurrent negligence was the sole and only proximate cause' thereof.” '
Because of what we believe to be the overwhelming preponderance of the evidence as reflected by the record in - the instant case, we think plaintiff’s charges of negligence may be somewhat summarily disposed without the necessity for any extended discussion. Plaintiff completely failed to establish (1) excessive speed; (2) failure to keep a lookout; (3) failure to timely apply brakes; (4) the existence of defective :braking equipment, or (5) negligent loading of the machinery and equipment carried by the truck.
The accident occurred on a long, ■straight, open stretch of Highway 80, which at the point was paved with a concrete slab-18 feet in width, the center thereof being marked by the usual black line, with shoulders approximately 8 feet in width on either side thereof. According to Glenn’s testimony he observed the Tutor automobile approaching him at some distance down the road, following a Pontiac car which was being driven by one Newell Sullivan, accompanied by his father, H. C. Sullivan; as the two cars more closely approached his truck Glenn, perceived the Tutor car move out into his lane of travel, at which time he made a moderate application of brakes; the Tutor car moved back into position in its right lane of travel behind the Sullivan Pontiac and Glenn released his brakes; then at a distance, too close to his truck for Glenn to make an estimate in feet, the Tutor car again moved out into the north lane of the highway immediately in front of defendant’s truck, whereupon Glenn applied his brakes and swung the truck to his right upon the north shoulder, the fear wheels of the truck and trailer dropping off the highway onto the shoulder-. The collision occurred immediately. It is true that Glenn did not apply his brakes with full power,, fearing that such action -yvould cause his truck to.immediately overturn, but it is, equally true, as established beyond any question, that Glenn, confronted with the happening of an instantaneous emergency, not only was free of negligence but tbok every possible precautionary measure in what he must have known-was a forlorn hope of attempting- to avoid a collision, despite the obvious danger to his own life. The sudden application of the brakes'and the swerving of the truck off the concrete highway onto the dirt shoulder of the road, considering the tremendous weight involved, was an ■ action fraught with danger, and, we pointedly observe, was the only action which could possibly have been taken under the circumstances. We think it is clear that .this action of defendant’s driver prevented a full head-on collision of the two vehicles, which -unquestionably would have resulted in snuffing *189 out the lives of' all the occupants of the Tutor automobile.
Learned counsel for both parties have furnished the court with most helpful briefs presenting their opposed positions and much of their discussion has been devoted to calculations of stopping distances, rates of travel of vehicles at given speeds, , and related computations. Regrettably, these calculations, in our opinion, are lacking in persuasion, for to us the clear impression of the circumstances surrounding this tragic accident have been so definitely established as to eliminate the necessity for a consideration of hypothetical abstractions.
There does not remain in our minds the shadow of a doubt, as to the correctness of the conclusion that this accident rer suited from the inexplicable and gross negligence of the driver of the Tutor automobile in pulling out from behind a preceding vehicle immediately into the path of defendant’? approaching truck. We are convinced that this was the proximate and only cause of the collision, and the record does not sustain,, even in the slightest degree, any imputation of negligence on the part of, defendant’s driver,.who,, we. ;trujy believe is rather entitled to commendation for .his action in the emergency, than to any suspicion of negligence. •
In support of their contention of • negligence on the part of Glenn, counsel for plaintiff urgently argue the showing of admissions by Glenn, assertedly made on three distinct occasions. These admissions consisted of statements allegedly made by Glenn to the effect that he would have been able to stop if the load on his truck had not shifted and thereby prevented the full and effective application of his brakes. Counsel claims that statements to this effect were made by Glenn to plaintiff’s mother some few days after the accident and at the scene thereof; again to plaintiff’s mother in plaintiff’s hospital room in Vicksburg, and again to a witness by the name of Dollar.
The making of these statements is squarely contradicted by defendant’s driver, Glenn. Plaintiff, in complete and absolute honesty, testified that she could not corroborate this point and that, indeed, her only knowledge of Glenn’s visit to her hospital room was based upon purely hearsay information. Dollar’s testimony on the point is fraught with inconsistencies and fails, in our opinion, to carry conviction. We can only conclude that Mrs. Evans, plaintiff’s mother, was mistaken or that she misinterpreted some ■ of Glenn’s remarks in the course of their brief conversations with reference to the accident.
We are reinforced in our conclusion that this contention fails to carry weight by the fact that it must have been lacking in persuasion with the members of the jury who saw and heard the witnesses, and which, when polled, was found to have unanimously reached a verdict in favor of defendant.
For the reasons assigned the judgment from which appealed is affirmed at appellant’s cost. ' •